CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 31 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONELL J. BLOUNT, SR., | ) | CASE NO. 7:14CV00007 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| SGT ERIC MILLER, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

    Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials at Red Onion State Prison violated his constitutional rights. Among other things, Blount alleges that various defendants unjustifiably placed and/or held him in improperly applied ambulatory restraints for 18 hours or denied him meals, showers, and recreation in retaliation for administrative complaints. Defendants have filed motions for summary judgment, and Blount has responded, making the matter ripe for disposition.[1]

    Upon review of the record, the court will grant summary judgment for defendants as to all claims except: the excessive force claims against Williams and Miller, and the deliberate indifference claims and due process claims against Miller, Collins, Still, and Hall, arising from Blount's 18-hour term in ambulatory restraints on November 5 and 6, 2013; and the deliberate indifference claim against Defendants Rose and Wood for allegedly giving Blount empty meal trays for six consecutive meals on October 9 and 10, 2013. Because Blount seeks monetary damages against these defendants and has invoked his right to a jury trial, these remaining claims will be set for trial.

---

[1] Defendants Miller, Hall, Collins, Franklin, Still, and Williams have filed a motion for summary judgment, supported by affidavits. Defendants Wood and Rose, who are represented by separate counsel, have each filed a motion for summary judgment, incorporating by reference the other defendants' motion and affidavits.

## STANDARDS OF REVIEW

A party is entitled to summary judgment if the pleadings, affidavits, and attached records on file show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Defendants assert the defense of qualified immunity against Blount's claims for monetary relief. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff's allegations state a claim that defendants' conduct violated a constitutional or statutory right; and if so, (b) whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 555 U.S. 223 (2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)). If the court determines that the facts alleged, taken in the light most favorable to the nonmovant, do not show that the officer's conduct violated a constitutional right, then the movant is entitled to summary judgment without further discussion of qualified immunity. Id. at 201.

## A CHAIN TOO SHORT

Taking Blount's allegations as true for purposes of the summary judgment analysis, these are the events relevant to his first set of claims. In the mid-afternoon of November 5, 2013, Blount tried to give an emergency grievance form to Williams, who refused to sign or take the document. Williams reported to Sgt. Miller that Blount had been kicking his door and tray slot and had disobeyed orders to stop, which Blount denies. A few minutes later, Miller took Blount's grievance, but refused to give Blount a receipt or return it. Blount said that he was going to write Miller up. Miller said Blount was going into chains.

Based on Miller's report that Blount had been kicking his door and threatening staff, Warden Mathena, the administrative duty officer ("ADO") for that shift, approved ambulatory restraints. Only the ADO can order placement in, or release from, ambulatory restraints. Miller returned to Blount's cell, where he, Williams, and two other officers placed Blount into ambulatory restraints without incident. In this form of restraint, the inmate is shackled and handcuffed in the front, a black box is attached over the cuffs, and a waist chain is applied vertically between the handcuffs and the shackles. This chain should be long enough to allow the inmate to stand up full length. Blount alleges that Miller purposely tied the chain so short that Blount could not raise his hands above his knees or stand erect. The nurse who checked to be sure the cuffs and shackles were not too tight did not check the length of the vertical chain. Miller told Blount to scoot back into the cell and shut the door.

When Blount tried to stand up, he discovered that the short chain prevented him. He complained immediately to Miller that he could not stand up, but Miller laughed and took no corrective action. Miller and Lt. Still later came to Blount's door, and he showed Still that the chain was too short for him to stand up straight. Still took no corrective action. When night shift

3

supervisor Collins made his first security rounds, Blount showed him the too-short chain and asked to be released. Collins took no corrective action and said he would not release Blount during his 12-hour shift. Blount was not disruptive while in the restraints. He suffered pain in his wrists and ankles and muscle cramps from his hunched position.

After the officers' shift changed again around 5:45 a.m. on November 6, 2013, Blount told and showed Hall that the chain on the restraints was too short. Hall took no corrective action. Hall, Wood, and Rose released Blount from the ambulatory restraints at 8:30 a.m. Blount alleges that the misapplied restraints caused him to suffer severe pain in his ankles and wrists and cramps in his muscles that continued for two days later. Blount received disciplinary charges for making a general threat and kicking his door and tray slot. Blount was not charged with any misbehavior while in ambulatory restraints and was not provided with notice or a hearing during the restraint period.

### 1. Interference with grievance procedure

Blount's claim that Williams and Miller violated his constitutional rights by refusing to accept, receipt, or return his emergency grievance on November 5, 2013, has no merit. Because inmates do not have a constitutionally protected right to a grievance procedure, neither a prisoner's use of grievance procedures nor his verbal complaints to officers are constitutionally protected. Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)). Thus, a prison official's failure to comply with the prison's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Because Blount's allegations state no constitutional claim against Williams and Miller related to his attempted use of the grievance procedure, the court will grant summary judgment for them on this claim.

4

## 2. Use of ambulatory restraints as excessive force

It is well established that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (internal quotations, alterations, and citation omitted). The core inquiry in an excessive force case is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" and was "nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 37, 39 (2010) (emphasis added) (quotations and citation omitted).

> When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Id. at 37 (quotations and citations omitted).

This court has held that in response to an inmate's undisputed disruptive behavior, application of ambulatory restraints for several hours as a control mechanism is not a use of excessive force. Holley v. Johnson, Case No. 7:08CV00629, 2010 WL 2640328, at *14 (W.D. Va. 2010) (citing other cases). If these restraints are applied as designed, they merely "limit an inmate's movements and [do not] inflict any measure of physical harm on him"; ambulatory restraints "do not prevent the restrained inmate from changing position [and] stretching his muscles." Id. Properly applied, as "a temporary limitation of an inmate's . . . freedom of movement, which causes the inmate no physical injury other than temporary discomfort and embarrassment," ambulatory restraints, even for a lengthy period, are not a use of force that offends contemporary standards of decency so as to satisfy the objective component of an excessive force claim. Id.

5

Officers Williams and Miller deny that their reports of Blount's disruptions were false, and Miller denies that he improperly applied the restraints with the chain too short. The court finds, however, that Blount has presented genuine issues of material fact in dispute on which he could persuade a jury that Williams and Miller maliciously made false reports about Blount kicking his door and making threats to persuade the ADO, unknowingly, to order that ambulatory restraints be applied in response to nondisruptive conduct, and that Miller intentionally shortened the chain for the very purpose of causing harm, in violation of the Eighth Amendment's protections against excessive force. These disputes preclude defendants' qualified immunity defense and their motion for summary judgment.

### 3. Deliberate indifference to a harmful condition

The Eighth Amendment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991). "Because evolving precepts of humanity and personal dignity animate the Eighth Amendment, [courts must be] guided by contemporary standards of decency in determining whether an alleged harm is sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). "To the extent that [prison living] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman. 452 U.S. 337, 347 (1981).

To state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was (1) objectively "sufficiently serious"; and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the

conditions. Wilson, 501 U.S. at 298. The inmate must show, objectively, that he suffered "a serious or significant physical or emotional injury resulting from the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (omitting internal quotations and citation). The court must consider "[t]he length of confinement under the challenged conditions" as a factor in determining whether plaintiff has presented evidence of sufficient injury. Holley, 2010 WL 2640328, at*14 (citing Hope v. Pelzer, 536 U.S. 730 (2002) (finding that handcuffing inmate to hitching post in hot sun for seven hours in awkward position with limited access to bathroom facilities and drinking water satisfied objective element of Eighth Amendment conditions claim). The subjective facet of a conditions claim requires facts showing that the official was deliberately indifferent to a hazardous condition—that he was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he actually drew that inference, and that he disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994).

Blount's Eighth Amendment claim against the officers who allegedly knew of and failed to correct the shortened chain arises, if at all, as a hazardous conditions claim. These officers are Miller, Still, Collins, and Hall. Blount alleges that he showed each of them the shortened chain, and they each made comments indicating they knew it was a problem for him, but none responded reasonably to the risk. Hall ultimately released Blount, but only after leaving him restrained by the shortened chain for more than two additional hours. Blount alleges that as a result of the officers' deliberate indifference, he suffered severe pain in his ankles and wrists and cramps in his muscles during the 18-hour restraint period and for two days afterward.

The officers present a different account. One officer states that he saw Blount standing erect during the restraint period, and all the officers state that if Blount had told them the chain

7

was too short, they would have arranged to correct the problem and have a nurse check him. They also assert that Blount's proof of injury is insufficient.

The court finds, however, that Blount has presented genuine issues of material fact on which he could persuade a jury that each of these defendants acted with deliberate indifference to a significant risk that he would suffer serious harm if left for hours hunched over by the shortened chain and failed to respond reasonably to that risk, and that he suffered significant and prolonged pain as a result. A reasonable jury could find that this condition was "sufficiently deleterious" to offend "contemporary standards of decency" so as to satisfy the objective component of an Eighth Amendment claim." Shakka, 71 F.3d at 166. Therefore, the court will deny summary judgment for Miller, Still, Collins, and Hall on Blount's deliberate indifference claim related to the ambulatory restraint period.

**4. Due process**

Blount asserts that because the too-short chain was an atypical hardship, he should have been provided with notice and a hearing at some point to determine if this restraint on his liberty for 18 hours was warranted. The court concludes that Blount has presented material disputes on which he could prevail in a procedural due process claim.

Inmates' federally protected liberty interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). This court has held that relatively lengthy periods in ambulatory restraints are not so atypical in a maximum security prison as to create a protected liberty interest or trigger due process protections. Holley, 2010 WL 2640328, at *16. Blount may be able to persuade a jury, however, that misapplication of the restraints for the 18-hour period in Blount's case was sufficiently atypical to trigger

8

federal procedural due process protections. Therefore, the court will deny summary judgment as to the due process claims against Miller, Still, Collins, and Hall.

### 5. Supervisory liability

Blount also moves to amend to add ADO Mathena and ADO Lt. Stanley to his Eighth Amendment and due process claims. During the restraint period, these officers alone had the authority to order Blount's placement in, or release from, ambulatory restraints. Blount complains that Mathena and Stanley should not have ordered the restraints, failed to ensure his release as soon as he was no longer disruptive, and failed to provide him with due process. While the court will grant the motion to amend, Blount's supervisory liability claims must be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[2]

In light of the Holley decision, these officers reasonably could have believed that use of the restraints for 18 hours as a control mechanism for a disruptive inmate did not violate the Eighth Amendment or due process, even if Blount was not disruptive while in restraints. 2010 WL 2640328, at *15 ("Even if Holley, once restrained, did not exhibit any further physical or verbal behavior suggesting he would injure himself or others if not restrained, the nature of the restraints themselves" was not excessive force and did not trigger federal due process protections under Sandin). Moreover, Blount has not stated any facts suggesting that Mathena or Stanley had actual or constructive knowledge that Blount's behavior did not warrant the initial application of the restraints or that the restraints were atypically applied and causing him harm because of the improperly attached chain. Thus, Blount fails to state any personal involvement in the alleged Eighth Amendment and due process violations as required to state an actionable

---

[2] Under § 1915A(b)(1), the court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted."

9

claim against them for supervisory liability claim.[3] See Randall v. Prince George's County, Md., 302 F.3d 188, 206 (4th Cir.2002); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). All supervisory liability claims against Mathena and Stanley will be summarily dismissed under § 1915A(b)(1).

## THE MEAL TRAYS WERE BARE

Taking Blount's allegations as true, these are the events relevant to his second set of claims. After Blount wrote two informal complaint forms about Officers Rose and Wood, these officers threatened to withhold his food and refuse him recreation and showers unless he withdrew the complaint forms. Blount refused. On October 9 and 10, 2013, these officers, who distributed meals together in Blount's pod, allegedly gave him empty meal trays or no meal tray for six consecutive meals. On October 15, 2013, the officers gave Blount empty trays for lunch and dinner. From these actions, Blount suffered with extreme hunger pains.

Blount told Hall about not getting his meals, and Hall allegedly said that if he withdrew his complaints, he would eat. Blount further alleges that Hall, Wood, and Rose refused to take him for recreation or showers during October 2013. When Blount told Franklin about these problems, Franklin said that he would support his officers, and Blount would get recreation, showers, and meals only if he withdrew his complaint forms and stopped filing grievances against officers.

Defendants deny that they ever gave Blount an empty meal tray. They assert that he often fails to comply with procedures and is sometimes refused a meal tray on that basis. Blount denies that he failed to follow feeding procedures on October 9, 10, and 15, 2013.

---

[3] Blount has no § 1983 claim based on any defendant's alleged failure to follow prison protocol regarding use of ambulatory restraints. See Morva v. Johnson, No. 7:09CV00515, 2011 WL 3420650, at *8 (W.D. Va. 2011) (finding that officials' failure to follow prison policies regarding use of restraint chair did not state constitutional claim) (citing United States v. Caceres, 440 U.S. 741 (1978)); Riccio v. Cnty. of Fairfax. Va., 907 F.2d 1459, 1469 (4th Cir.1990) (holding that state official's failure to follow state procedural law is not a federal due process issue).

10

### 1. Retaliation

Prison officials may not retaliate against an inmate for exercising his constitutional rights. See, e.g., Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To state a § 1983 claim of retaliation, an inmate plaintiff must allege facts showing that his exercise of his constitutional right was a substantial factor motivating the retaliatory action. See, e.g., Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action"). A prisoner's use of grievance procedures and verbal complaints to officers are not constitutionally protected activities. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011) (applying Adams, 40 F.3d at 75). Blount's retaliation claim thus fails at its inception. In refusing to withdraw his complaints, Blount was not exercising any constitutionally protected right. Thus, the retaliatory conduct he alleges—denial of meals, recreation, and showers—is not actionable as such under § 1983. Therefore, defendants' motions will be granted as to Blount's retaliation claims.

### 2. Denial of meals and privileges

Blount also frames his contentions about his meals and privileges as an unconstitutional conditions claim under the Eighth Amendment. As stated, such a claim is triggered only by "deprivations denying the minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298. The inquiry must be whether depriving a cooperative inmate of meals, showers, and recreation offends the "precepts of humanity and personal dignity" so as to violate "contemporary standards of decency" and constitute a "harm [ ]sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim." Shakka, 71 F.3d at 166. Ordinarily,

11

this facet of the claim requires "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Id.

Some of Blount's conditions complaints do not rise to constitutional proportions, namely, his claims that he had no showers or out-of-cell recreation for a month, and that on one day, he missed two meals in a row. Blount does not state any serious harm he suffered from these short-term deprivations or show that he could not wash himself and exercise to some degree in his cell. See, e.g., Islam v. Jackson, 782 F.Supp. 1111, 1114 (E.D. Va. 1992) (finding that inmate's missing one meal as isolated event did not state Eighth Amendment violation); Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992) (finding that inmate who claimed "nebulously" that he was "denied meals, clean clothes, showers and recreation periods, but not that he went hungry or lived in an unsanitary, wholly sedentary environment" had alleged "admittedly uncomfortable conditions," but did not "articulate a situation that could be fairly characterized as cruel and unusual punishment"). The court concludes that this aspect of Blount's conditions claim fails to rise to constitutional proportions. Therefore, the court will grant summary judgment for defendants regarding the allegations about showers and recreation, and periodic meal deprivations.

The court does not reach the same conclusion concerning Blount's allegation that Wood and Rose denied him six consecutive meals. Allegations of inadequate prison food service may be sufficient to state a cognizable claim under § 1983, so long as the deprivation is serious. Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985); Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir. 1978) (prisoner's allegation of failure to provide adequate sanitary food service facilities states a cognizable claim); French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985) (finding that inmates are entitled to receive nutritionally adequate food).

The court takes judicial notice of the Virginia Department of Corrections ("VDOC") hunger strike protocol, which is triggered to protect an inmate's health after he has voluntarily refused nine consecutive meals.[4] In this context, a reasonable jury could find that denying an inmate six consecutive meals against his will without any procedural or disciplinary justification, as Blount alleges, falls outside contemporary standards of decent treatment for prisoners so as to state a viable Eighth Amendment claim against Wood and Rose. Therefore, the court will deny summary judgment as to Blount's claim that these defendants denied him six consecutive meals on October 9 and 10, 2013.

The court will grant summary judgment for Hall and Franklin as to this claim, however. Blount states no facts indicating that either of these defendants had any personal involvement in the alleged deprivation of his meals. Shaw, 13 F.3d at 799.

## CONCLUSION

For the reasons stated, the court will deny defendants' motions for summary judgment as to these claims: the excessive force claims against Williams and Miller, and the deliberate indifference claims and due process claims against Miller, Collins, Still, and Hall, arising from Blount's 18-hour term in improperly configured ambulatory restraints that forced him to remain in a painful, hunched position on November 5 and 6, 2013; and the deliberate indifference claim against Defendants Rose and Wood for allegedly giving Blount empty meal trays for six consecutive meals on October 9 and 10, 2013. The court will grant summary judgment for defendants as to Blount's claims alleging interference with the grievance procedures, retaliation, supervisory liability, and denial of showers, recreation, and isolated meals. Given these findings, the court must deny Blount's motion for summary judgment. The court will grant Blount's

---

[4] See "11 inmates on hunger strike at Red Onion," The Richmond Times Dispatch, May 24, 2012, available at http://www.richmond.com/news/article_9a85e6a0-53a8-5c15-872d-1ddf0983c5a4.html.

motions to amend to add new defendants, but all claims against these defendants must be summarily dismissed without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. The remaining claims will be set for trial. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 31st day of March, 2015.

/s/ Glen Conrad
Chief United States District Judge